No. 23-12538-J

---

### IN THE UNITED STATE COURT OF APPEALS
### FOR THE ELEVENTH CIRCUIT

---

### DATUM SOFTWARE, INC.,

*Plaintiff-Appellant,*

v.

### CITIZANT, INC.,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
For the Middle District of Alabama, No. 2:23-cv-00136-KFP

---

### CORRECTED RESPONSE BRIEF OF APPELLEE CITIZANT, INC.

---

Tenley A. Carp
Justin F. Ferraro
**ARNALL GOLDEN GREGORY LLP**
2100 Pennsylvania Avenue NW,
Suite 350S
Washington, DC 20037
Tel: (202) 677-4066
Fax: (202) 677-4067
tenley.carp@agg.com
justin.ferraro@agg.com

Erin N. Winn
**ARNALL GOLDEN GREGORY LLP**
171 17th Street NW,
Suite 2100
Atlanta, GA 30363
Tel: (404) 873-8721
erin.winn@agg.com

*Attorneys for Defendant-Appellee*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Defendant-Appellee Citizant, Inc. hereby certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case on appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

- Arnall Golden Gregory LLP – counsel for Defendant-Appellee

- Citizant, Inc. – Defendant-Appellee

- Carp, Tenley A. – counsel for Defendant-Appellee

- Datum Software, Inc. – Plaintiff-Appellant

- Ferraro, Justin F. – counsel for Defendant-Appellee

- Frawley, Jamie Helen Kidd – counsel for Defendant-Appellee

- Jackson, Michael S. – counsel for Plaintiff-Appellant

- McNeill, Randall J. – counsel for Defendant-Appellee

- Lord, Sara M. – counsel for Defendant-Appellee

- Pate, Hon. Kelly F. – U.S. Magistrate Judge for the Middle District of Alabama

4859-0484-3183.v2

- Webb McNeill Walker PC – counsel for Defendant-Appellee

- Webster, Henry, Bradwell, Cohan, Speagle & Deshazo, P.C. – counsel for Plaintiff-Appellant

- Winn, Erin N. – counsel for Defendant-Appellee

Pursuant to Eleventh Circuit Rules 26.1-1 through 26.1-3, Defendant-Appellee Citizant, Inc. also makes the following statement as to corporate ownership:

Defendant-Appellee Citizant, Inc. is a privately held company, and is not a subsidiary of any other entity. Citizant, Inc. also certifies that no publicly held corporation owns 10% or more of its stock.

Dated: April 1, 2024                    Respectfully submitted,

                                        By:/s/*Tenley A. Carp*

                                        Tenley A. Carp
                                        **ARNALL GOLDEN GREGORY LLP**
                                        2100 Pennsylvania Avenue NW,
                                        Suite 350S
                                        Washington, DC 20037
                                        Tel: (202) 677-4066
                                        Fax: (202) 677-4067
                                        tenley.carp@agg.com

iii

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully submits that the district court's final order dismissing Appellant's claims is correctly decided, that the legal issues are straightforward, and that oral argument is unnecessary in connection with this appeal.

4859-0484-3183.v2

## TABLE OF CONTENTS

I.    STATEMENT OF THE ISSUES ...................................................... 1

II.   STATEMENT OF THE CASE  ...................................................... 2

III.  SUMMARY OF THE ARGUMENT ................................................ 7

IV.   STANDARD OF REVIEW ............................................................ 8

V.    ARGUMENT ................................................................................. 9

     A.    THE DISTRICT COURT CORRECTLY DISMISSED DATUM'S
         BREACH OF CONTRACT CLAIM ...................................................... 9

         1.    THE TEAMING AGREEMENT IS AN UNENFORCEABLE
             AGREEMENT TO AGREE ........................................................... 9

         2.    THE TEAMING AGREEMENT HAS EXPIRED. .................... 15

     B.    THE DISTRICT COURT CORRECTLY DISMISSED DATUM'S
         FRAUD CLAIM. ........................................................................... 15

         1.    THE DISTRICT COURT CORRECTLY APPLIED THE
             FEDERAL PLEADING STANDARD. ..................................... 16

         2.    THE DISTRICT COURT CORRECTLY CONCLUDED THAT
             DATUM'S FRAUD CLAIM WAS INSUFFICIENTLY PLED.
             .................................................................................................. 16

         3.    EVEN IF DATUM HAD SATISFIED THE REQUISITE
             PLEADING STANDARD, IT STILL WOULD HAVE FAILED
             TO STATE A FRAUD CLAIM UNDER BOTH GEORGIA
             AND ALABAMA LAW. ............................................................ 19

     C.    THE DISTRICT COURT PROPERLY DENIED DATUM LEAVE TO
         AMEND ITS COMPLAINT. .................................................... 21

         1.    DATUM FAILED TO REQUEST LEAVE TO AMEND ITS
             COMPLAINT. ............................................................................ 21

         2.    AMENDMENTS TO DATUM'S CLAIMS WOULD BE
             FUTILE. .................................................................................... 22

     D.    CONCLUSION AND RELIEF SOUGHT ............................................. 24

4859-0484-3183.v2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Aircraft Indus., Inc. v. Boeing Co.*,
No. 20-11141, 2022 WL 433457 (11th Cir. Feb. 14, 2022) ..........................9, 19

*Allen v. Aetna Cas. & Surety Co.*,
222 Va. 361 (1981) ...........................................................................................10

*Anderson v. Clark*,
775 So. 2d 749 (Ala. 1999)...........................................................................18, 19

*Blackburn v. Shire US Inc.*,
18 F.4th 1310 (11th Cir. 2021) ...........................................................................22

*Burger King Corp. v. Weaver*,
169 F.3d 1310 (11th Cir. 1999) ..........................................................................23

*CGA Fed., Inc. v. FCi Fed., Inc.*,
295 Va. 506 (2018) ..............................................................................10, 14, 15

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.,
Fla.*, 48 F.4th 1222 (11th Cir. 2022)...............................................................8, 22

*Coldmatic Refrigeration of Canada, Ltd. v. Hess*,
257 Ga. App. 753, 572 S.E.2d 6 (2002) ............................................................21

*Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*,
945 F.3d 1150 (11th Cir. 2019) ............................................................................9

*Cyberlock Consulting, Inc. v. Info. Experts, Inc.*,
549 F. App'x 211 (4th Cir. 2014) .......................................................................15

*Cyberlock Consulting, Inc. v. Info. Experts, Inc.*,
939 F. Supp. 2d 572 (E.D. Va. 2013) ..............................................10, 13, 14, 15

*Doe 8 v. Chiquita Brands Int'l, Inc.*,
143 S. Ct. 2659 (2023) ........................................................................................23

*Doug's Coin & Jewelry, Inc. v. America's Value Channel, Inc.*,
2:12–cv–01095–MHH, 2015 WL 3632228 (N.D. Ala. June 10,
2015) ..................................................................................................19

*Filak v. George*,
267 Va. 612 (2004) ............................................................................10

*Garcia v. Chiquita Brands Int'l, Inc.*,
48 F.4th 1202 (11th Cir. 2022) ..........................................................23

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck
Drivers Local No. 70 of Alameda Cnty.*,
415 U.S. 423 (1974).............................................................................16

*Jackson v. Am. Sav. Mortg. Corp.*,
924 F.2d 195 (11th Cir. 1991) ............................................................16

*Johnson v. Specialized Loan Servicing, LLC*,
No. 21-12327, 2022 WL 320854 (11th Cir. Feb. 3, 2022).................17

*Lambert v. First Fed. Mortg.*,
47 F. Supp. 3d 1310 (N.D. Ala. 2014)................................................21

*Long v. Satz*,
181 F.3d 1275 (11th Cir. 1999) ..........................................................22

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ..........................................................18

*Navar, Inc. v. Fed. Bus. Couns.*,
291 Va. 338 (2016) ............................................................................10

*Omnipol, A.S. v. Multinational Defense Serv., LLC*,
32 F.4th 1298 (11th Cir. 2022) ..........................................................17

*Patel v. Ga. Dep't BHDD*,
485 F. App'x 982 (11th Cir. 2012)......................................................23

*Pelletier v. Stuart-James Co.*,
863 F.2d 1550 (11th Cir. 1989) .....................................................21, 24

*Renasant Bank v. Park Nat. Corp.*,
No. 12-689-WS-C, 2013 WL 1499580 (S.D. Ala. Apr. 10, 2013) ....20

*Roofing & Sheet Metal Serv., Inc. v. La Quinta Motor Inns, Inc.*,
   689 F.2d 982 (11th Cir. 1982) ...................................................................9

*Rosa & Raymond Parks Inst. for Self Dev. v. Target Corp.*,
   812 F.3d 824 (11th Cir. 2016) .............................................................19

*Rosenberg v. Gould*,
   554 F.3d 962 (11th Cir. 2009) .............................................................22

*Sapuppo v. Allstate Floridian Ins. Co.*,
   739 F.3d 678 (11th Cir. 2014) .....................................................9, 20, 23

*United States v. Stein*,
   889 F.3d 1200 (11th Cir. 2018) ...........................................................24

*Vascular Ventures, LLC v. Am. Vascular Access, LLC*,
   No. 16-481-KD-B, 2017 WL 4638597 (S.D. Ala. Oct. 16, 2017) ....................20

*W.J. Schafer Assocs. v. Cordant, Inc.*,
   254 Va. 514 (1997) ...........................................................................10

*Wagner v. Daewoo Heavy Indus. Am. Corp.*,
   314 F.3d 541 (11th Cir. 2002) .........................................................21, 22

*Walker v. Jones*,
   10 F.3d 1569 (11th Cir. 1994) .............................................................24

**Other Authorities**

Alabama Rule of Civil Procedure 9(b) ....................................................18

Fed. R. Civ. P. 9(b) ....................................................5, 7, 16, 17, 18

Federal Rule of Civil Procedure 12(b)(6) ....................................4, 8, 22

Federal Rule of Civil Procedure 81(c) ....................................................16

4859-0484-3183.v2

## **STATEMENT OF ADOPTION**

Pursuant to Federal Rule of Appellate Procedure 28(i) and 11th Circuit Rule 28-1(f), Citizant, Inc. expressly adopts Appellant Datum Software, Inc.'s Statement of Jurisdiction.

4859-0484-3183.v2

## I.    <u>STATEMENT OF THE ISSUES</u>

The issues presented in this appeal are: (1) whether the district court properly granted Citizant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim; and (2) whether the district court properly denied Datum leave to amend its Complaint.

4859-0484-3183.v2

## II.    <u>STATEMENT OF THE CASE</u>

On December 19, 2019, the United States Air Force ("USAF") awarded Citizant Prime Contract FA8771-20-D-0003 ("Prime Contract") for services in support of the Small Business Enterprise Application Solutions ("SBEAS") program. On May 6, 2020, Datum signed Citizant's Indefinite Delivery, Indefinite Quantity Subcontract No. 20-02021 ("Master Subcontract"), under which the parties agreed to potentially team together to bid on future task order requests that might be issued under the SBEAS program. Subsequently, on April 13, 2021, pursuant to the terms of the Master Subcontract, Citizant executed a Teaming Agreement with Datum ("Teaming Agreement"), under which the parties agreed, as prime contractor and subcontractor, to jointly submit proposals for three identified task orders issued under the Prime Contract: (1) AFLCMC/HIM Agile Maintenance Support (AMS) Subject Matter Expert (SME) Services II; (2) 78TH Wing Legacy Applications Support Services and (3) Air Force Records Information Management System Maintenance & Sustainment (AFRIMS). (*See generally* Doc. 1-4.)

The Teaming Agreement outlines the respective obligations and responsibilities of the parties during the solicitation process for the three task orders. (*Id.*). The Teaming Agreement also establishes guidelines for the execution of the *subsequent* subcontracts governing the actual performance of the work if the USAF were to award Citizant any of the three identified task orders. (*See id.*). For example,

4859-0484-3183.v2

the Teaming Agreement states:

> 2.2    If, during the term of this Agreement, prime contracts or task orders resulting from the Solicitations are awarded to Citizant, *the Parties will undertake commercially reasonable efforts towards entering into subcontracts for that portion of the work as set forth in Exhibit A of this Agreement, as may be modified by the Parties*. . . .

*(Id.* – p. 2.) In other words, if the USAF awarded Citizant a task order, the parties would then try to enter into a *subsequent* subcontract that would govern the parties' performance under the task order. (*Id.*)

On September 21, 2021, the USAF awarded Citizant the task order identified as AFLCMC/HIM Agile Maintenance Support (AMS) Subject Matter Expert (SME) Services II ("AMSSME Task Order"), to be performed at Gunter Air Force Station in Montgomery, Alabama. (Doc. 1-1 – pp. 5-6.) In accordance with Article 2.2 of the Teaming Agreement, on October 21, 2021, the parties executed an independent subcontract governing the work Datum would perform under the AMSSME Task Order ("AMSSME Subcontract"). (Doc. 1-5.) The AMSSME Subcontract includes terms specifically governing Datum's workshare and payment for work performed under the AMSSME Task Order. (*Id.*) Datum and Citizant negotiated and consented to the terms of the AMSSME Subcontract after the award of the AMSSME Task Order to Citizant. The AMSSME Subcontract, not the Teaming Agreement, has, and continues to, govern the parties' performance under the AMSSME Task Order. The AMSSME Subcontract was modified by the parties four times, on February 24,

2022; June 1, 2022; September 9, 2022; and September 26, 2022. (Docs. 1-6, 1-7, 1-8, and 1-9).[1]

On February 10, 2023, Datum filed the underlying Complaint in the Circuit Court of Montgomery, Alabama, with service completed on February 13, 2023. The Complaint alleges a cause of action for breach of contract based on the allegation that Citizant breached the Teaming Agreement by failing to pay Datum 60% of the awarded labor dollars, and a cause of action for fraud based on the allegation that Citizant represented that it would "make up" the amount owed to Datum on future projects and failed to do so.

On March 10, 2023, Citizant removed this case to the United States District Court for the Middle District of Alabama, Northern Division (Doc. 1), and on March 17, 2023, timely filed a motion to dismiss the Complaint for failure to state a claim for either breach of contract or fraud under Fed. R. Civ. P. 12(b)(6). (Doc. 14 – p. 1.) Citizant further argued that Virginia law applied to Datum's breach of contract claim, while Georgia law applied to Datum's fraud claim under the choice-of-law rules of the forum state—Alabama. (*Id.* – pp. 6-8.) Citizant moved to dismiss Datum's breach of contract claim on the basis that the Teaming Agreement upon which Datum staked its claim was an unenforceable agreement to agree under

---

[1] The district court took judicial notice of the existence of the AMSSME Subcontract and the accompanying modifications of the AMSSME Subcontract. (Doc. 23 – pp. 8-9.) Datum does not challenge this determination on appeal.

Virginia law. (*Id.* – pp. 8-12.) Citizant moved to dismiss the fraud claim on the basis that it did not satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b). (*Id.* – p. 12-14.) Citizant also moved to dismiss Datum's fraud claim on the ground that a claim for fraud cannot be predicated on promises to perform some act in the future. (*Id.*)

Datum filed its opposition to Citizant's motion on April 4, 2023, arguing that it had sufficiently pled claims for both breach of contract and fraud. (*See generally* Doc. 16.) Datum also argued that the district court should refrain from making a choice-of-law determination at this stage of the litigation and argued that Alabama law should apply to both its breach of contract claim and its fraud claim. (Doc. 16 – p. 5.)

With respect to its breach of contract claim, Datum argued that the Teaming Agreement was enforceable. (*Id.* – pp. 5-6.) For its fraud claim, Datum argued that it sufficiently pled the claim because Datum filed its Complaint in state court, so Federal Rule of Civil Procedure 9(b)'s heightened pleading standard did not apply to the claim. (*Id.* – pp. 6-8.)  Finally, Datum argued that if the district court found that the Complaint did not meet the federal pleading standard for fraud, it should be allowed to amend its claim. (*Id.*) Datum did not, however, attach an amended complaint or specify how it would (or could) meet the heightened pleading requirements.

5

Citizant replied on April 11, 2023 that Datum failed to plead a claim for breach of contract under both Alabama and Virginia law, because neither state enforces agreements to agree. (Doc. 19 – p. 6.) Citizant further argued that, regardless of whether the district court applied Alabama or federal pleading standards, Datum failed to sufficiently plead its fraud claim. (*Id.* – p. 8.) Citizant also highlighted that Datum failed to state a claim for fraud under either Georgia law or Alabama law because under either law a fraud claim cannot be predicated on an unenforceable agreement. (*Id.* – pp. 8-9.) Finally, Citizant argued that Datum's Complaint should be dismissed with prejudice because amendment would be futile. (*Id.* – p. 10.)

On July 6, 2023, the district court granted Citizant's motion to dismiss and dismissed Datum's Complaint with prejudice. (*See generally,* Doc. 23.) The district court applied Virginia law to Datum's breach of contract claim and Georgia law to Datum's claim for fraud. (Doc. 23 – pp. 9, 14-15.)  The district court found that Datum's breach of contract claim failed because the Teaming Agreement was an unenforceable agreement to agree. (*Id.* – pp. 9-13.) The district court also concluded that regardless of whether or not the Teaming Agreement was an agreement to agree, it was expired under its own terms and therefore unenforceable as to post-award conduct. (*Id.* – p. 13.) For these reasons, the district court found that amendment of Datum's breach of contract claim would be futile. (*Id.* – p. 14.)

4859-0484-3183.v2

Additionally, the district court found that Datum failed to satisfy the federal pleading standard for fraud. (*Id.* – pp. 14-16.) Relatedly, the district court determined that amendment of Datum's fraud claim would be futile because it was based on an unenforceable agreement and because promises of future performance cannot serve as the foundation for a fraud claim. (*Id.* – pp. 16-17.)

Datum filed its notice of appeal to this court on August 4, 2023. (Doc. 24.)

### III.    <u>SUMMARY OF THE ARGUMENT</u>

The district court correctly granted Citizant's Motion to Dismiss and correctly dismissed Datum's Complaint with prejudice. As an initial matter, the district court correctly applied Virginia law to Datum's breach of contract claim, a decision that Datum does not dispute on appeal. Under Virginia law, Datum failed to state a claim for breach of contract because the Teaming Agreement, the contract that serves as the basis for Datum's claim, is an unenforceable agreement to agree. Notwithstanding the unenforceability of the Teaming Agreement as an agreement to agree, the Teaming Agreement is also, by its own terms, expired and therefore unenforceable.

The district court also correctly dismissed Datum's fraud claim under the heightened federal pleading standard in Federal Rule of Civil Procedure 9(b). Because the Alabama pleading standard is nearly identical to Rule 9(b), Datum also failed to state a claim for fraud under Alabama law. Furthermore, the district court

7

correctly applied Georgia law to Datum's fraud claim—a decision Datum also does not clearly dispute on appeal. Instead, Datum argues that under either Georgia or Alabama law, Datum's Complaint sufficiently stated a claim for fraud. Datum is incorrect on both counts because, under both Georgia and Alabama law, a fraud claim cannot be based on an unenforceable agreement.

Finally, the district court correctly denied Datum leave to amend its Complaint because any amendment would be futile. With respect to Datum's breach of contract claim, Datum cannot provide any facts to make the Teaming Agreement enforceable when the agreement is, by its own terms, unenforceable. Similarly, Datum has presented no additional facts to demonstrate that leave to amend its Complaint would revive its fraud claim. As a result, Citizant requests that the Court affirm the district court's order dismissing Datum's Complaint with prejudice.

## IV.    <u>STANDARD OF REVIEW</u>

Datum has appealed the district court's decision to dismiss its Complaint under Federal Rule of Civil Procedure 12(b)(6) and to deny Datum leave to amend its Complaint. This Court reviews *de novo* a district court's dismissal under Rule 12(b)(6) for failure to state a claim. *See Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, *Fla.*, 48 F.4th 1222, 1229 (11th Cir. 2022). Although this Court generally reviews "a district court's denial of a motion to amend only for abuse of discretion," "a decision that a particular amendment to the complaint would be

futile" is reviewed *de novo*. *See Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1163 (11th Cir. 2019).

## V.    ARGUMENT

### A.    THE DISTRICT COURT CORRECTLY DISMISSED DATUM'S BREACH OF CONTRACT CLAIM.

The district court correctly dismissed Datum's breach of contract claim for two reasons: (1) the Teaming Agreement is an unenforceable agreement to agree; and (2) the Teaming Agreement has expired.

#### 1.    The Teaming Agreement is an unenforceable agreement to agree.

Under Virginia law, a plaintiff asserting a breach of contract claim must establish "a legally enforceable obligation of a defendant to a plaintiff" exists.[2]  *See*

---

[2] Datum does not challenge the district court's conclusion that Virginia law applies to Datum's breach of contract claim and has thus failed to preserve this ground for appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed."). Regardless of whether Datum preserved the issue, it is clear that Virginia law applies. "A federal court in a diversity case must generally apply the state law that would be applied by the courts of the state in which it sits." *Roofing & Sheet Metal Serv., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 991 (11th Cir. 1982) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)). Under Alabama law, "contractual choice-of-law provisions are generally enforceable" for breach of contract claims. *See Ala. Aircraft Indus., Inc. v. Boeing Co.*, No. 20-11141, 2022 WL 433457, at *8 (11th Cir. Feb. 14, 2022) (citing *Stovall v. Universal Constr. Co.*, 893 So. 2d 1090, 1102 (Ala. 2002)). Under Article 10 of the Teaming Agreement, the agreement "shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, excluding its Conflict of Laws provisions." (Doc. 1-4 – p. 6.)

*Filak v. George*, 267 Va. 612, 619 (2004). A contract is enforceable where there is "mutual assent of the contracting parties to terms reasonably certain under the circumstances . . . ." *Allen v. Aetna Cas. & Surety Co.*, 222 Va. 361, 364 (1981).

It is well settled in Virgina—and most other jurisdictions—that "contractual provisions that 'merely set out agreements to negotiate future subcontracts' are unenforceable." *CGA Fed., Inc. v. FCi Fed., Inc.*, 295 Va. 506, 515 (2018) (quoting *Navar, Inc. v. Fed. Bus. Couns.*, 291 Va. 338, 347 (2016)). Furthermore, Virginia courts have consistently found that documents between subcontractors and prime contractors titled "teaming agreements" are unenforceable agreements to negotiate future subcontracts. *See*, *e.g.*, *CGA Fed., Inc.*, 295 Va. at 516; *Navar, Inc.*, 291 Va. at 345; *W.J. Schafer Assocs. v. Cordant, Inc.*, 254 Va. 514, 520 (1997); *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 939 F. Supp. 2d 572, 578 (E.D. Va. 2013), aff'd, 549 F. App'x 211 (4th Cir. 2014).

Applying these principles, the district court correctly concluded that the provisions in the Teaming Agreement do not create an enforceable agreement governing the performance of a potential future contract. Instead, the terms of the Teaming Agreement only stipulate the parties' respective obligations related to submitting bids to the USAF for the three task orders. The parties' obligations under the Teaming Agreement extend no further.

For example, Article 2.1 of the Teaming Agreement provides that Citizant and

Datum "shall use all commercially reasonable efforts to secure awards under the Solicitations for the Programs through preparation of responsive proposals." (Doc. 1-4 – p. 2.) In addition, under Article 4.1, Datum is required to prepare and provide to Citizant technical information to assist in soliciting task orders. (*Id.* – p. 3.) These provisions, however, do not govern Citizant or Datum's post-award obligations under a task order.

Rather than defining the terms of a post-award subcontract, the Teaming Agreement created a framework for *negotiating* post-award subcontracts. In other words, the Teaming Agreement provided guidelines for Datum and Citizant to negotiate a future subcontract *if* the USAF awarded a task order to Citizant. For instance, Article 2.2 of the Teaming Agreement only required the parties to "undertake commercially reasonable efforts" to enter a subcontract if the USAF awarded Citizant a task order. (*Id.* – p. 2.) Likewise, Article 3.2 stipulates that Citizant "**intend[ed]** to offer a subcontract" to Datum only if (1) a task order was awarded to Citizant; and (2) certain conditions outlined in Article 3.2 were met. (*Id.* – p. 3) (emphasis added.) Notably, these conditions included obtaining the USAF's consent to the subcontract and further negotiating Datum's responsibilities, "including but not limited to price, schedule, and terms and conditions." (*Id.*)

Furthermore, the Teaming Agreement frequently uses the term "anticipated" to describe Datum or Citizant's post-award obligations. (*Id.* – p. 1 ("WHEREAS,

Citizant desires that Team Member participate in said Proposals and in said Programs as Team Member under the **anticipated** prime contract or task order (the 'Prime Contract') to Citizant") (emphasis added).) In fact, while Datum primarily relies on Attachment A of the Teaming Agreement to support its argument, Attachment A also defines Datum's allocation and scope of work as "anticipated." (*Id.* – p. 8 ("This Attachment A outlines the **anticipated** scope of services to be provided by Team Member upon award of the Contracts/Task Orders to Citizant . . .;") (emphasis added); (". . . Citizant **anticipates** allocating work to Team Member as described in this Attachment A.") (emphasis added).) This tentative language in the Teaming Agreement indicates that the parties expected that Datum would perform work for Citizant under the prime contract, but does not establish the terms under which it would do so.

Finally, the Teaming Agreement also envisioned the possibility that the parties would not enter into a subcontract even if Citizant was awarded a task order. Article 7.1 states that the Teaming Agreement would "automatically expire" upon the "[f]ailure, following good faith negotiations, of Citizant and Team Member to agree to the terms of a[n] Agreement within sixty (60) calendar days from the date of Team Member's receipt of a draft Agreement post-award." (*Id.* – p. 5.) Thus, while the Teaming Agreement reflects the parties' expectation that they would enter into a subsequent subcontract, it also makes clear that the actual award of work to

12

Datum was contingent on the execution of the subsequent subcontract and that the Teaming Agreement would terminate if parties failed to execute a subcontract.

Article 7.1 also provides that the Teaming Agreement is to expire following the award of a task order to Citizant and the execution of a subcontract with Datum governing the performance of work under that task order. (*Id.*) After the USAF awarded Citizant the AMSSME Task Order, Citizant and Datum did execute such a subcontract—the AMSSME Subcontract. (Doc. 1-5.)

The noncommittal language in the Teaming Agreement demonstrates that the Teaming Agreement is merely an agreement to negotiate future subcontracts between Citizant and Datum. And Datum and Citizant's subsequent execution of the AMSSME Subcontract, in which the parties agree to specific workshare allocation and payment terms, further demonstrates that the Teaming Agreement merely set out guidelines for future contract negotiations.

As the district court emphasized, the Teaming Agreement contains precisely the type of language that the United States District Court for the Eastern District of Virginia identified as indicative of an unenforceable agreement to agree in *Cyberlock Consulting, Inc. v. Information Experts, Inc.*, 939 F. Supp. 2d 572, 582 (E.D. Va. 2013), aff'd 549 F. App'x 211 (4th Cir. 2014). In *Cyberlock*, the parties entered into a similar teaming agreement to the one at issue here—the teaming agreement there (1) designated a percentage of the workshare under a prime contract to the

subcontractor; (2) only called for the parties to "exert reasonable efforts . . . to negotiate a subcontract for the Program . . .;" (3) conditioned any post-award subcontract on certain requirements; (4) referred to a future subcontract and the subcontractor's workshare "in uncertain, tentative terms" such as "anticipated;" and (5) provided for the termination of the teaming agreement if the parties failed to "reach an agreement on a subcontract after a reasonable period of good faith negotiations." *Cyberlock Consulting, Inc.*, 939 F. Supp. 2d at 581 (internal quotations omitted). The *Cyberlock* court found that the teaming agreement "set out an agreement to negotiate in good faith to enter into a future subcontract" and that such an agreement "is precisely the type of agreement that has consistently and uniformly been found unenforceable in Virginia." *Id.* at 582 (cleaned up).

The Virginia Supreme Court also found a similar teaming agreement to be an unenforceable agreement to agree in *CGI Fed., Inc. v. FCi Fed., Inc.*, 295 Va. 506, 516 (2018). The *CGI* teaming agreement contained a statement of work detailing the subcontractor's post-award workshare, required the parties to enter "good faith negotiations for a subcontract," and called for the agreement to terminate if the parties did not reach an agreement on a subcontract. *CGI Fed., Inc.*, 295 Va. at 515-16. The *CGI* court found that "these provisions make clear the parties never agreed to the final terms of a subcontract . . . ." *Id.* at 516.

Like the teaming agreements in *Cyberlock* and *CGI*, the Teaming Agreement

in this case did not create a binding obligation on Citizant to provide Datum with 60% of the workshare. At most, the Teaming Agreement "imposed a framework for good faith negotiations of a final subcontract . . . ." *Cyberlock*, *Consulting, Inc.*, 939 F. Supp. 2d at 582. "Virginia courts have uniformly refused to enforce agreements to agree at a future date . . . ." *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 549 F. App'x 211, 211 (4th Cir. 2014). Thus, the Teaming Agreement is unenforceable.

### 2.    The Teaming Agreement has expired.

The district court correctly found that the Teaming Agreement—by its own terms—has expired and therefore is unenforceable. Article 7.1 provides that the Teaming Agreement shall "automatically expire upon" the "execution of a[n] Agreement between Citizant and Team Member following award of the Prime Contract to Citizant." (Doc. 1-4 – p. 5.) As Datum acknowledges, Citizant and Datum executed the AMSSME subcontract following the award of the AMSSME Task Order to Citizant. (Doc. 1-5.) Accordingly, even accepting all Datum's allegations as true, Datum cannot rely on an expired agreement to support its breach of contract claim. The district court therefore correctly granted Citizant's motion to dismiss Datum's breach of contract claim.

### B.    THE DISTRICT COURT CORRECTLY DISMISSED DATUM'S FRAUD CLAIM.

The district court correctly concluded that Datum failed to state a claim for fraud for three reasons: (1) the district court correctly applied the federal pleading

standards to Datum's fraud claim; (2) Datum's fraud claim lacks the requisite particularity under Federal Rule of Civil Procedure 9(b) and, if they applied, the Alabama Rules of Civil Procedure; and (3) notwithstanding Datum's failure to meet the pleading standards, Datum's fraud claim would still fail to state a claim under both Georgia and Alabama law.

## 1.    The district court correctly applied the federal pleading standard.

First, the district court correctly applied the federal pleading standard to Datum's fraud claim. Although Datum filed its complaint in Alabama state court, Citizant removed this case to federal court on March 9, 2023. (Doc. 1.) Under Federal Rule of Civil Procedure 81(c), the Federal Rules "apply to a civil action after it is removed from state court." *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974) ("[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings . . . ."); *Jackson v. Am. Sav. Mortg. Corp.*, 924 F.2d 195, 198 n.9 (11th Cir. 1991) ("The Federal Rules of Civil Procedure govern procedure in federal court after removal."); *see also Johnson v. Specialized Loan Servicing, LLC*, No. 21-12327, 2022 WL 320854, at *2 (11th Cir. Feb. 3, 2022) (federal pleading standard applies to cases removed to federal court).

## 2.    The district court correctly concluded that Datum's fraud claim was insufficiently pled.

Second, the district court correctly determined that Datum's claim failed to meet the federal pleading standards. (*See* Doc. 23 – pp. 16-17.)[3]  Federal Rule of Civil Procedure 9(b) states, in relevant part, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This Court has explained that "particularity" "means identifying the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Defense Serv., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022). In particular, the requirements of Rule 9(b) are satisfied if the complaint identifies:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)).

As the district court acknowledged, Datum failed to identify necessary details about Citizant's alleged fraud. Datum alleged only that Citizant "represented to Datum that it would pay Datum Sixty Percent (60%) of awarded labor dollars for the AMSSME task order" and that "it would pay Datum the Eleven Percent (11%) it

---

[3] In its originally filed Response Brief, Citizant unintentionally misquoted Datum's Opening Brief. (*See* Doc. 25 - p. 26.) Accordingly, this sentence has been modified in Citizant's Corrected Brief in order to fix this error.

owed and/or that it would 'make up' the amount on future or other task orders." (Doc. 1-1 – p. 8.) Datum does not identify the time or place of Citizant's allegedly fraudulent statements, or who at Citizant committed an allegedly fraudulent act. Datum merely recites the bare bones elements of a fraud claim, which is insufficient to survive a motion to dismiss. Therefore, the district court correctly dismissed Datum's fraud claim for failure to comply with the pleading requirements outlined in Rule 9(b).

Datum's claim also falls short under Alabama's pleading standards. Like Federal Rule of Civil Procedure 9(b), Alabama Rule of Civil Procedure 9(b) requires "particularity" in the pleading. The Supreme Court of Alabama has explained "that '[t]he pleader . . . must use more than generalized or [conclusory] statements when setting out the allegations of fraud.'" *Anderson v. Clark*, 775 So. 2d 749, 752 n.5 (Ala. 1999). And, "[t]he pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained." *See id.* (cleaned up).

Therefore, even under Alabama law, a heightened pleading requirement applied to Datum's fraud claim. Datum's Complaint relies on conclusory and generalized statements, which are insufficient to state a claim for fraud under Alabama's heightened pleading requirements. *Anderson*, 775 So. 2d 749, 752 n.5 (Ala. 1999). Accordingly, the district court correctly dismissed Datum's fraud claim.

4859-0484-3183.v2

**3.    Even if Datum had satisfied the requisite pleading standard, it still would have failed to state a fraud claim under both Georgia and Alabama law.**

The district court correctly applied the choice-of-law rules of the forum state, Alabama. *See Rosa & Raymond Parks Inst. for Self Dev. v. Target Corp.*, 812 F.3d 824, 829 (11th Cir. 2016). For tort claims, Alabama applies the *lex loci delicti* rule, which requires courts to analyze claims under the law of the state where the injury occurred. *See Ala. Aircraft Indus., Inc. v. Boeing Co.*, No. 20-11141, 2022 WL 433457, at *10 (citing *Ne. Utils., Inc. v. Pittman Trucking Co.*, 595 So. 2d 1351, 1354 (Ala. 1992)). In the case of purely economic damages, like Datum's alleged damages, the "injury" for choice of law purposes occurs in the jurisdiction where those economic damages are felt. *See Doug's Coin & Jewelry, Inc. v. America's Value Channel, Inc.*, 2:12–cv–01095–MHH, 2015 WL 3632228, at *8 (N.D. Ala. June 10, 2015) (citing *Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991)).

Datum is a Georgia corporation and, as a result, the district court correctly determined that any economic injuries would be felt in Georgia. (Doc. 23 – p. 15); *see Vascular Ventures, LLC v. Am. Vascular Access, LLC*, No. 16-481-KD-B, 2017 WL 4638597, at *9 (S.D. Ala. Oct. 16, 2017) ("[T]he injury to Plaintiff and its members is financial and the location where the financial injury was felt was (is) in Alabama, the state where Plaintiff and its members are located"); *Renasant Bank v.*

*Park Nat. Corp.*, No. 12-689-WS-C, 2013 WL 1499580, *7 (S.D. Ala. Apr. 10, 2013) (Georgia law governed tort claims because company's "headquarters and all of its branches were located in Georgia," so the company's injuries would have been sustained in Georgia).

The district court also found that Datum failed to state a claim for fraud because it was premised on an unenforceable future promise. (Doc. 23 – p. 17.) Notably, Datum failed to raise this ground for dismissal on appeal. Thus, Datum has waived any argument contesting the district court's decision with respect to this issue. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.").

Even if Datum had raised this issue on appeal, its fraud allegation is primarily based on the workshare provision in the unenforceable Teaming Agreement. (Doc. 1-1 – pp. 7-8.) Datum, however, cannot sustain a fraud claim based on an unenforceable promise. *See Pelletier v. Stuart-James Co.*, 863 F.2d 1550, 1555–56 (11th Cir. 1989); *Coldmatic Refrigeration of Canada, Ltd. v. Hess*, 257 Ga. App. 753, 572 S.E.2d 6, 8 (2002); *Lambert v. First Fed. Mortg.*, 47 F. Supp. 3d 1310, 1320 (N.D. Ala. 2014). As a result, the district court properly dismissed Datum's fraud claim.

4859-0484-3183.v2

## C.    THE DISTRICT COURT PROPERLY DENIED DATUM LEAVE TO AMEND ITS COMPLAINT.

The district court correctly denied Datum leave to amend its Complaint for two reasons: (1) Datum failed to properly request leave to amend; and (2) amendment would be futile.

### 1.    Datum failed to request leave to amend its complaint.

Despite Datum's claims, the district court was not required to grant Datum leave to amend its deficient complaint simply because Citizant removed the case to federal court. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). Aside from an informal request embedded in its response to Citizant's motion to dismiss, Datum failed to file a motion to amend or formally request leave to amend in any other manner. As this Court has stated, "where [as here] a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Chabad Chayil, Inc.*, *Fla*., 48 F.4th at 1236; *see also Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (denying request for leave to amend where the request "was included in the memorandum she filed in opposition to the motion to dismiss").

21

Even if Datum's request to amend was proper, a "motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Satz*, 181 F.3d at 1279. Datum failed to include either the substance of its proposed amendment or a copy of its amended complaint. The district court therefore correctly denied Datum's request to amend. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (the district court did not abuse its discretion in denying request for leave to amend where the request did not "describe the substance of [the] proposed amendment").[4]

### 2.    Amendments to Datum's claims would be futile.

As an initial matter, Datum failed to contest on appeal the district court's finding that amendment would be futile. So, Datum has waived this argument. *See Sapuppo*, 739 F.3d at 680. Even assuming Datum properly raised this issue on appeal, however, any amendment of Datum's claims would be futile because, as the district court found, the defects in Datum's breach of contract and fraud claims are

---

[4] To the extent that Datum argues that it needed to wait until the district court's ruling on Citizant's motion to dismiss to file its request for leave to amend, this Court has rejected such an idea. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542-43 (11th Cir. 2002) (concluding that a plaintiff seeking to amend its complaint cannot "sit idly by" and "await[] the district court's determination with respect to a Rule 12(b)(6) motion to dismiss"); *Blackburn v. Shire US Inc.*, 18 F.4th 1310, 1318 (11th Cir. 2021) (finding no abuse of discretion in the district court's conclusion that permitting an amendment after a ruling on a motion to dismiss "would be contrary to promoting judicial efficiency").

not curable. This Court "has found that denial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (quoting *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985)); *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022), cert. denied sub nom. *Doe 8 v. Chiquita Brands Int'l, Inc.*, 143 S. Ct. 2659 (2023) (finding a district court "need not give leave to amend . . . where amendment would be futile").

Datum failed to provide any reason "for the district court to believe that it could offer sufficient allegations to make a claim for relief plausible on its face." *Patel v. Ga. Dep't BHDD*, 485 F. App'x 982, 983 (11th Cir. 2012). The Teaming Agreement is unenforceable as a matter of law, and Datum cannot amend its Complaint to make the Teaming Agreement anything other than an unenforceable agreement to agree.[5]

Datum's fraud claim is similarly incapable of amendment. Even if Datum

---

[5] To the extent that Datum requests leave to amend its Complaint to add a breach of contract claim based on the AMSSME Subcontract, this request is wholly different from a request to amend its current breach of contract claim. Datum did not raise this argument at district court level and therefore cannot request leave to add a claim at the appellate level. *See United States v. Stein*, 889 F.3d 1200, 1202 (11th Cir. 2018) ("Because these arguments were never presented by the government to the district court, we decline to consider them in the first instance."); *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (quoting *Depree v. Thomas*, 946 F.2d 784, 793 (11th Cir. 1991)) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.").

could provide sufficient information to meet the heightened pleading requirements,

Datum cannot base its fraud claim on unenforceable promises. *Pelletier*, 863 F.2d

1550, 1555–56 (11th Cir. 1989) ("Where a contract is unenforceable, an action for

damages cannot be maintained on the ground of fraud in refusing to perform the

contract, even though the promisor at the time of making the oral contract may have

had no intention of performing it."). As a result, the district court properly found that

leave to amend Datum's claims would be futile.

**D.     CONCLUSION AND RELIEF SOUGHT**

For the foregoing reasons, Citizant respectfully requests that this Court affirm

the district court's dismissal with prejudice of Datum's claims.

Dated: April 1, 2024                           Respectfully submitted,

                                               By: /s/ *Tenley A. Carp*

                                               Tenley A. Carp
                                               **ARNALL GOLDEN GREGORY
                                               LLP**
                                               2100 Pennsylvania Avenue NW,
                                               Suite 350S
                                               Washington, DC 20037
                                               Tel: (202) 677-4066
                                               Fax: (202) 677-4067
                                               tenley.carp@agg.com

## CERTIFICATE OF COMPLIANCE

I, Tenley A. Carp, certify that the foregoing has been prepared in compliance with the typeface and type style requirements of FRAP 32(a)(5) and 32(a)(6). This Brief was prepared with Times New Roman (14 Point) font, with margins of one (1) inch on all four sides. The Brief does not exceed the 13,000 word limit set by FRAP 32(a)(7)(B)(i). The Brief contains 5,753 words, excluding the parts of the document exempted by FRAP 32(f). The entire document contains 7,147 words.

Dated: April 1, 2024                    Respectfully submitted,

By:/s/ *Tenley A. Carp*

Tenley A. Carp
**ARNALL GOLDEN GREGORY LLP**
2100 Pennsylvania Avenue NW, Suite 350S
Washington, DC 20037
Tel: (202) 677-4066
Fax: (202) 677-4067
tenley.carp@agg.com

25

## CERTIFICATE OF SERVICE

On April 1, 2024, I served a copy of the foregoing **CORRECTED RESPONSE BRIEF OF APPELLEE CITIZANT, INC.** by electronic mail as indicated below, and I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. All participants in this case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

Micheal S. Jackson
Webster, Henry, Bradwell, Cohan,
Speagle & Deshazo, P.C.
P.O. Box 239
Montgomery, AL 36101
mjackson@websterhenry.com

Dated: April 1, 2024                    Respectfully submitted,

By:/s/*Tenley A. Carp*

Tenley A. Carp
**ARNALL GOLDEN GREGORY LLP**
2100 Pennsylvania Avenue NW, Suite 350S
Washington, DC 20037
Tel: (202) 677-4066
Fax: (202) 677-4067
tenley.carp@agg.com

4859-0484-3183.v2